SOCIETE ANONYME DU FILTRE CHAMBERLAND SYSTEME PASTEUR
et al. v. ALLEN et al.

(Circuit Court of Appeals, Sixth Circuit.   November 9, 1898.)

No. 556.

1. PATENTS—PRELIMINARY INJUNCTION—REVIEW OF ORDER.
     The functions of the circuit court of appeals, in reviewing orders granting or refusing preliminary injunctions, are such that it may properly affirm an order granting an injunction in one case, and an order refusing one in another, on substantially the same evidence; the matter being one not involving the exercise of exact legal judgment on the part of the trial court, but merely judicial discretion.[1]

2. SAME—FAILURE OF DEFENDANT TO MAKE FULL DISCLOSURE.
     The refusal of a preliminary injunction in a suit for infringement, although the defendant's affidavits did not disclose the materials or mode of manufacture of the alleged infringing product, will not be reversed on appeal, the weight to be given to such fact being a matter within the sound discretion of the trial court.

Appeal from the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

Paul A. Staley, for appellants.

Almon Hall, for appellees.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

TAFT, Circuit Judge.   This is an appeal from an order of the circuit court of the Northern district of Ohio refusing to grant a preliminary injunction on a bill filed by the Societe Anonyme Du Filtre

[1] As to decrees granting injunctions in patent cases generally, see notes to Consolidated Piedmont Cable Co. v. Pacific Cable Ry. Co., 3 C. C. A. 572, and Southern Pac. Co. v. Earl, 27 C. C. A. 189.

Chamberland Systeme Pasteur and the Pasteur Chamberland Filter Company against Mortimer H. Allen and the Allen Manufacturing Company, to enjoin the infringement of letters patent No. 336,385, granted to Charles E. Chamberland for a filtering compound.   84 Fed. 812.   The invention is described by the patentee in his specifications as follows:

"The means hitherto employed for filtering water ordinarily consist in the use of burned brick, powdered substances, and various other materials, but which, either from the character of the materials themselves, or from the manner in which they are used or compounded, are not fully satisfactory, where great thoroughness · in filtering is requisite.   However efficient the named substances may be for filtering purposes, yet they do not, however, retain all germs or microbes, or extremely fine organisms, which are in suspension in the water or other liquid.   *   *   *   My invention is designed more completely to hold back and retain such germs.   The compound is formed substantially of pipe clay, or any other suitable clay, and porcelain earth, or its equivalents hereinafter named.   The clay is diluted in water, and then mixed with porcelain earth or its equivalents.   The porcelain earth is ground or reduced to fine powder in any suitable mill, after having been previously baked in any suitable kiln.   The proportions are from twenty to forty per ·cent. of clay to sixty to eighty per cent. of porcelain earth or its equivalents. They may, however, vary more or less.   I wish it, however, to be understood that I do not limit myself to the above-named substances; for the same, or very much the same, result may be attained by using, for instance, silex, magnesia or its equivalent, instead of porcelain earth.   *   *   *   A filtering body produced from the above compound is homogeneous, and fulfills the required conditions for filtering.   I do not wish to be understood as laying claim broadly to the materials hereinabove mentioned as a filtering compound, but only when they are treated as above specified."   "I claim a filtering compound formed of porcelain earth baked and reduced to a powder and pipe clay, combined in the proportions set forth, the said compound being baked, substantially as set forth."

The defendant M. Allen, it appears from the evidence, had been sales agent of the complainant company.   He had nothing to do, so far as the evidence shows, with the manufacture of the filtering compound, and was not possessed of any more of their trade secrets than was involved in the sale of the patented article.   The complainant had great difficulty in finding out where the filtering material of the defendants was manufactured.   Allen, the defendant, misled the complainant's agents on this point by false statements.   They finally discovered, however, that the tubes or filtering vessels were made by the Brewer Pottery Company, at Tiffin, Ohio.   Upon application to Brewer, the president of that company, for a sample of the material, he declined to give it, but said that he would testify in full when the suit was brought.   The complainant obtained from Allen a piece of a broken tube, which was subjected to chemical and mechanical ·analysis.   The results of these analyses are. given in affidavits of chemists.   They do not establish that the process of manufacture used was the same as that described in the patent, though they have some tendency to show that the materials were probably the same.   Brewer, the president of the Brewer Pottery Company, makes an affidavit, introduced by the defendants, in which he swears that the process which he follows in making the filtering tubes for the defendants is a secret process, not known even to the defendants; that it is entirely different from that of the complainants; that he subjects the material to a heat of 3,000 degrees Fahrenheit,—a heat which would utterly destroy the tubes

of the complainants for filtering purposes; that the Allen tube is much less porous than the so-called Pasteur tube; that in the manufacture of the Allen tube there is no pipe clay or any ground, baked porcelain, or earthen ware used; that the clay compound used in the manufacture of the tubes for Allen is substantially the same compound which has been employed by potters and manufacturers of earthen and porcelain ware for more than 20 years; that the exact proportions of the compound, the degree of heat necessary, and the time of baking requisite for the best results have been arrived at only by careful experiment and extreme nicety of treatment; that, in arriving at the ingredients, proportions, and treatment of the material used in the manufacture, he has expended much time, trouble, and more money than he has received for the tubes, and for such expenditure of time, labor, and money he can receive adequate remuneration only by being permitted, for the present, to keep such formula and process secret; that he is willing, however, and will, if so directed, confidentially inform the court, or a proper commissioner to be appointed for that purpose, of the details of such formula and process. The court below found that there was not sufficient proof of infringement to justify his issuing the injunction. Referring to the refusal to disclose just what the defendants' filter was made of, the learned judge at the circuit said:

"It is quite true that this affidavit of Brewer's is somewhat disingenuous in its refusal to disclose the precise character of the compound he uses for the defendant, and the exact processes by which it is completed in the factory. He offers, in connection with his refusal, to disclose it confidentially to a commissioner of the court, but this scarcely will relieve the fact that he does refuse to disclose it, claiming it as a trade secret of his own. But I am not prepared to say that, if we give the most comprehensive effect to this refusal, the defendant is bound by it; nor am I quite prepared to say that on a defense like this of his manufacture he is bound to make such disclosure in an affidavit. If the plaintiffs need the proof in aid of their bill, they have the remedy of a bill of discovery, or of an examination of witnesses, and, in the absence of a resort to some such remedy for obtaining proof, it may be that the refusal to disclose is not reprehensible. The defendant is under no obligation to aid the plaintiffs in the procurement of their proof, and this is only another illustration of a necessity for waiting in a case like this until the final hearing before issuing any process of injunction."

The weight to be given to the circumstances of nondisclosure by the defendant or his witnesses upon a preliminary hearing with reference to the question of an infringement was one which addressed itself to the court below in the exercise of a sound legal discretion as to whether the preliminary injunction should issue or not. Unless we reach the conclusion that this discretion has been abused, we should not reverse the action of the court below. We are not prepared to say that, even in the absence of any direct evidence at all as to the infringement, a court might not, on a motion for a preliminary injunction, infer infringement from the disingenuousness of defendant's witnesses and their reluctance to disclose all the facts. The ordinary rule is that one who has knowledge peculiarly within his own control, and refuses to divulge it, cannot complain if the court puts the most unfavorable construction upon his silence, and infers that a disclosure would have shown the fact to be as claimed by the opposing party. But the court below has not deemed it proper, in view of the circum-

90 F.—52

stances, to put this unfavorable construction on the conduct of the defendant and the person who makes his tubes. The complainant, even upon a preliminary hearing, had full opportunity to apply to the circuit court for leave to examine Brewer and compel a disclosure, but it did·not see fit to take this course.

While, if this court were now called upon as an original question to announce a conclusion upon the weight of the evidence and the significance to be attached to the silence of the defendant and his witnesses in respect to the process by which his tubes are made, we might decide that there was sufficient evidence of infringement, we cannot say that the action of the court below in holding otherwise exceeded the limits of a sound judicial discretion. As we base our conclusion upon the issue of infringement, the prior decision of this court, and of other courts in other states, upon the same patent, upon applications for preliminary injunctions therein, are of no importance, because they did not present the same facts. The question for the court upon this hearing is whether the court below exceeded the limits of a sound judicial discretion in refusing an injunction to the complainant. We may answer this question in the affirmative, without deciding that, had the court entered an order for the injunction, that order should be reversed. The function of the court of appeals, in hearings like this, is such that it may properly affirm an order refusing a preliminary injunction in one case and an order granting it in another on substantially the same evidence, because it is easy to conceive a case presenting upon a preliminary hearing such an evenly balanced controversy that the court above would affirm the action of the court below, whether one way or the other, when that action involves the exercise, not of exact judicial judgment, but merely judicial discretion. The patent at bar has been before this court in the case of Blount v. Societe, 6 U. S. App. 335, 3 C. C. A. 455, and 53 Fed. 98. In that case the circuit court for the Southern district of Ohio had granted an injunction against the defendant, who had been the intimate and confidential agent and officer of the complainant company, and who, it was shown to the satisfaction of the circuit court, was making filters like those described in the patent. This court, after considering the record before the circuit court, held that, in the granting of the order of injunction, the sound legal discretion of the circuit court had not been improvidently exercised. In this case, upon the same patent, but upon different evidence as to the infringement, we hold that the action of the court below in refusing to grant an injunction was within the limits of its sound legal discretion. It is to be hoped that the patent and the evidence in this case will now come up for final hearing and the controversies arising on it be finally adjudicated. The order of the circuit court is affirmed.