299 F.2d 33
 1 A.L.R.3d 752, 132 U.S.P.Q. 475
 SOCIETE COMPTOIR DE L'INDUSTRIE COTONNIERE ETABLISSEMENTS
BOUSSAC, Christian Dior, Societe a Responsabilite
Limitee, Paris, and Christian Dior New
York, Incorporated,
Plaintiffs-Appellants,
v.
ALEXANDER'S DEPARTMENT STORES, INC., Defendant-Appellee.
 No. 125, Docket 26881.
 United States Court of Appeals Second Circuit.
 Argued Dec. 7, 1960.
Decided Feb. 14, 1962.
 
 Morton Amster, Amster & Levy, New York City (David L. Rayvid, Edward F. Levy and Jesse Rothstein, New York City, on the brief), for plaintiffs-appellants.
 Robert E. Burns, New York City (Allan Zelnick, J. Norman Lewis, James P. Durante, Frederick E. Smithline, (Lewis, Durante & Bartel, New York City, on the brief), for defendant-appellee.
 Marshall C. Berger, New York City (Sylvan Gotshal and Ira M. Millstein, Weil, Gotshal & Manges, New York City, on the brief), for Chambre Syndicale de la Couture Parisienne, as amicus curiae.
 Before WATERMAN, SMITH and MARSHALL, Circuit Judges.
 SMITH, Circuit Judge.
 
 
 1
 This is an appeal from denial of two separate motions for preliminary injunction seeking to enjoin the use of the names 'Dior' and 'Christian Dior' by defendant.
 
 
 2
 Plaintiffs' first application for a preliminary injunction alleging trademark infringement and unfair competition was denied in a reasoned opinion, Dimock, D.J., 190 F.Supp. 594 (S.D.N.Y.1961) and a subsequent motion made after additional use of the name was likewise denied, Murphy, D.J., May 17, 1961. The two appeals have been considered as one by stipulation of the parties. Affirmed.
 
 
 3
 Plaintiffs are a group of foreign and domestic corporations who do business under the names 'Dior' and 'Christian Dior,' which names are registered as trademarks. Defendant is the owner of retail, discount type, department stores in a metropolitan area and is well known for its low cost retailing policies which are made possible by the use of self-service merchandising techniques and a high volume, low mark-up policy. Defendant used the name of 'Dior' and 'Christian Dior' extensively to promote the sale of garments copied from original creations designed by the house of Dior.
 
 
 4
 The award of a preliminary injunction is an extraordinary remedy which will not be granted unless upon a clear showing of probable success and possible irreparable injury to the plaintiffs, lest the proper freedom of action of the defendant be circumscribed when no wrong has been committed.
 
 
 5
 The question before this court is whether, on the basis of the pleadings and affidavits submitted, the two judges below clearly abused their discretion. United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263 (1936); Meccano Ltd. v. John Wanamaker, 253 U.S. 136, 40 S.Ct. 463, 64 L.Ed. 822 (1920); Huber Baking Co. v. Stroehmann Bros. Co., 208 F.2d 464 (2 Cir. 1953).
 
 
 6
 Defendant's representation that the garments being sold by it were copies of plaintiffs' original creations was apparently truthful. We do not understand plaintiffs to claim that the garments were so poorly made or executed as not to constitute copies; but in any event they have certainly failed to establish that to be the case. The merchandise was so described in newspaper advertisements, on hang tags attached to the garments reading, 'Original by Christian Dior-- Alexander's Exclusive-- Paris-- Adaptation'; and on a television fashion show sponsored by defendant which employed a singing commercial.[1]
 
 
 7
 The District Court concluded that no attempt had been made to deceive the public and that no deception or confusion existed with respect to the garments being sold or as to sponsorship by plaintiffs. While it is possible that plaintiffs may be able to show some confusion in the public mind as to sponsorship, or origin of the goods, at a full trial, there is certainly nothing in the record before us to indicate that the factual finding that neither the hang tags, the newspaper advertisements nor the television show in fact deceived the public as to origin or sponsorship of the garments, was clearly erroneous.
 
 
 8
 Plaintiff urges that by virtue of its licensing arrangements with others the public is confused as to sponsorship of the garments. But if it be true that the public associate all dresses referred to as copies of 'Dior Originals' with the plaintiff, then plaintiff, the licensor, must be prepared to show that control was maintained, not only of the manner and the price at which the dresses were retailed, but of the manufacture of the garments, for a bare license is a fraud upon the public and unlawful. E.I. du Pont de Nemours & Co. v. Celanese Corp. of America, 167 F.2d 484 (C.C.P.A.1948); Campbell Soup Co. v. Armour & Co., D.C., 81 F.Supp. 114 (1948), aff'd 175 F.2d 795 (3 Cir. 1948). But it is sufficient at this stage of the proceedings to say that neither of the District Judges concluded that a sufficient showing of confusion had been made and we are not persuaded this conclusion was clearly erroneous.
 
 
 9
 Although the granting or denial of a preliminary injunction is within the discretion of the court to which it is addressed, where it is plain that the disposition was in substantial measure a result of the lower court's view of the law, which is inextricably bound up in the controversy, the appellate court can, and should review such conclusions. Ring v. Spina, 148 F.2d 647, 650, 160 A.L.R. 371 (2 Cir. 1945).
 
 
 10
 In any proceeding under the Lanham Act the gist of the proceeding is a 'false description or representation,' 15 U.S.C.A. 1125(a), or a use of the mark which 'is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services,' 15 U.S.C.A. 1114(1). The registering of a proper noun as a trade-mark does not withdraw it from the language, nor reduce it to the exclusive possession of the registrant which may be jealously guarding against any and all use by others. Registration bestows upon the owner of the mark the limited right to protect his good will from possible harm by those uses of another as may engender a belief in the mind of the public that the product identified by the infringing mark is made or sponsored by the owner of the mark. Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947) citing with approval, Prestonettes, Inc. v. Coty, 264 U.S. 359, 44 S.Ct. 350, 68 L.Ed. 431 (1924). The Lanham Act does not prohibit a commercial rival's truthfully denominating his goods a copy of a design in the public domain, though he uses the name of the designer to do so. Indeed it is difficult to see any other means that might be employed to inform the consuming public of the true origin of the design. Cf. Nims, Unfair Competition and Trade-Marks, sec. 130(a) (4th Ed. 1947).
 
 
 11
 Those cases involving sponsorship, whether trademark infringement or unfair competition, protecting the owner of the mark, are based upon a finding that the defendant's goods are likely to be thought to have originated with, or to have been sponsored by, the true owner of the mark. E.g., Triangle Publications v. Rohrlich. 167 F.2d 969 (2 Cir. 1948); Adolph Kastor & Bros. Inc. v. F.T.C., 138 F.2d 824 (2 Cir. 1943).
 
 
 12
 Common law unfair competition must be grounded in either deception or appropriation of the exclusive property of the plaintiff. The line of cases relied upon by plaintiffs, e.g., International News Service v. The Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1911), Madison Square Garden Corp. v. Universal Pictures Corp., 255 App.Div. 459, 7 N.Y.S.2d 845 (1st Dept. 1938), Dior v. Milton, 9 Misc.2d 425, 155 N.Y.S.2d 443 (Sup.Ct.1956), aff'd 2 App.Div.2d 878, 156 N.Y.S.2d 996 (1st Dept.), Metropolitan Opera Ass'n v. Wagner-Hichols Recorded Corp., 199 Misc. 786, 101 N.Y.S.2d 483 (Sup.Ct.1950), aff'd 279 App.Div. 632, 107 N.Y.S.2d 795 (1st Dept. 1951), did not prohibit the defendant from informing the public as to the source of a product which he was permitted to sell. On the contrary, the defendant in each case was prohibited from pirating the intangible property of complainant. Norwich Pharmacal Co. v. Sterling Crug, Inc., 271 F.2d 569, 571 (2 Cir. 1959); Continental Casualty Co. v. Beardsley, 151 F.Supp. 28 (S.D.N.Y.1957), aff'd in part, 253 F.2d 702 (2 Cir.) cert. den. 358 U.S. 816, 79 S.Ct. 25, 3 L.Ed.2d 58 (1958). See Note, 70 Harv.L.Rev. 1117 (1957).
 
 
 13
 In the case at bar it is conceded that the 'pirating' of the design is lawful and proper. Fashion Originators' Guild of America v. F.T.C., 114 F.2d 80 (2 Cir. 1940), aff'd 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941). The only property right alleged to have been invaded is the good will embodied in the trademark. But the right of the complainant in his mark is limited to dilution which is brought about by confusion as to source or affiliation. Cornell University v. Messing Bakeries, 285 App.Div. 490, 138 N.Y.S.2d 280 (3rd Dept. 1955), aff'd per curiam, 309 N.Y. 722, 128 N.E.2d 421 (1955), Norwich Pharmacal Co. v. Sterling Drug, Inc., supra; Standard Brands, Inc. v. Smidler, 2 Cir., 151 F.2d 34 (1945).
 
 
 14
 Involved in the instant case is a conflict of values which necessarily arises in an economy characterized by competition and private property. The courts have come to recognize the true nature of the considerations often involved in efforts to extend protection of common law trade names so as to create a shield against competition. Standard Brands v. Smidler, 151 F.2d 34, 41 (2 Cir. 1945) (concurring opinion, Frank, C.J.). The interest of the consumer here in competitive prices of garments using Dior designs without deception as to origin, is at least as great as the interest of plaintiffs in monopolizing the name.
 
 
 15
 The decision of the District Court is affirmed with respect to both motions.
 
 
 
 [1]
 'Dior, Dior, Christian Dior, the latest, latest, Chic-est, sleekest clothing you've been waiting for. That's Christian Dior,-- Dior, Dior, Christian Dior, for coats with an elegant swirl, Dior, Dior, Christian Dior, whose dresses make you look like a girl. Suits fit floppier, they flatter any form, even if you're just above or just below the norm. Dior, Dior, Christian Dior, the latest, latest, Chic-est, sleekest clothing you've been waiting for. That's Christian Dior.'