887 A.2d 1144 (2005)
382 N.J. Super. 102
Joseph KINSELLA, Plaintiff-Respondent,
v.
NYT TELEVISION; The New York Times Company; Discovery Communications, Inc., Defendants, and
JERSEY SHORE MEDICAL CENTER and Meridian Health System, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 2005.
Decided December 6, 2005.
*1145 J. Barry Cocoziello, Newark, argued the cause for appellants (Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, attorneys; Mr. Cocoziello and Marianne C. Tolomeo, on the brief).
John E. Keefe, Jr., Shrewsbury, argued the cause for respondent (Lynch, Keefe, Bartels and Gill & Chamas, attorneys; Mr. Keefe, Jr., Gerald H. Clark, Raymond A. Gill, Jr. and Kevin L. Parsons, on the brief).
Windels, Marx, Lane & Mittendorf, Florham Park, attorneys for amicus curiae New Jersey Hospital Association (Ross A. Lewin, of counsel and on the brief; Ellen M. Christofferson, on the brief).
Before Judges SKILLMAN, AXELRAD and LEVY.
SKILLMAN, P.J.A.D.
The primary issue presented by this appeal is whether the names of hospital patients are protected from disclosure by the Hospital Patients Bill of Rights Act, N.J.S.A. 26:2H-12.7 to 12.11, or the Physician-Patient privilege, N.J.S.A. 2A:84A-22.1 *1146 to -22.7. We conclude that both statutory enactments protect the names of hospital patients from disclosure.
Plaintiff was admitted to the trauma center at defendant Jersey Shore Medical Center on July 9, 2001. Shortly after his hospitalization, plaintiff was videotaped by defendant NYT Television, a division of defendant New York Times Company (referred to collectively as NYT), for a television program called "Trauma: Life in the ER," which was shown on The Learning Channel. Although plaintiff signed a form consenting to this videotaping, he contends that his consent was invalid because the pain from his injuries and the sedating effect of his medications prevented him from making an "intelligent and informed" decision to allow the videotaping.
Plaintiff brought this action against NYT for invading his privacy by videotaping him while he was in the trauma center. By amended complaints, plaintiff joined Jersey Shore Medical Center and its owner and operator, Meridian Health System (referred to collectively as Jersey Shore), and Discovery Communications, which owns and operates The Learning Channel, as defendants.[1]
Plaintiff served a subpoena upon Jersey Shore for the production of various documents, including:
The names and addresses of all Jersey Shore Medical Center hospital patients who were filmed in connection with NYT Television's "Trauma: Life in the ER" from May, 2001  September, 2001.
Jersey Shore produced forms signed by forty-three patients consenting to the videotaping, thus disclosing the names of those patients. However, Jersey Shore refused to disclose the names of any other patients, claiming that those patients had a confidentiality interest in their admission to the trauma center that was protected from disclosure by the Hospital Patients Bill of Rights Act and the Physician-Patient privilege.
The dispute over the confidentiality of the names of patients who did not sign consent forms was brought before the trial court on multiple occasions. The court ruled each time that Jersey Shore was required to disclose the names.
On Jersey Shore's motion to vacate the prior orders requiring such disclosure, the trial court issued a lengthy written opinion that rejected the hospital's claim that the patients who did not sign consent forms have a confidentiality interest that protects their names from disclosure to plaintiff and his counsel. The court concluded that disclosure of the names and addresses of a hospital's patients does not violate either the Hospital Patients Bill of Rights Act or the Physician-Patient privilege. In reaching this conclusion, the court stated that disclosure of the "[n]ames and addresses [of persons admitted to a hospital] provide[s] no information about the treatment or medical condition of the patient." In addition, the court observed that "[t]he intent of the physician-patient privilege is to protect what was done to the patient by the doctor at the hospital, not the fact that the person was a patient at the hospital." The court also concluded that even if the names of the persons admitted to Jersey Shore were protected from disclosure by the Hospital Patients Bill of Rights Act or the Physician-Patient privilege, Jersey Shore would be required to disclose this *1147 information under the doctrine of judicial estoppel because, by allowing NYT to videotape its patients, Jersey Shore had previously taken the position that the identity of persons admitted to the hospital was not confidential.
We granted Jersey Shore's motion for leave to appeal from the order memorializing this ruling and summarily vacated the order because our order granting leave to appeal a prior trial court order had divested that court of jurisdiction.[2] After we decided the prior interlocutory appeal, the trial court granted plaintiff's motion to reinstate the order requiring Jersey Shore to disclose the names and addresses of patients videotaped by NYT.
We granted Jersey Shore's motion for leave to appeal from this order. We also granted the New Jersey Hospital Association's motion for leave to file an amicus curiae brief.
We conclude that the names and addresses of patients admitted to a hospital are protected from disclosure by both the Hospital Patients Bill of Rights Act and the Physician-Patient privilege. We also conclude that plaintiff has not shown an interest in learning the identity of other patients videotaped by NYT that outweighs those patients' interests in maintaining the confidentiality of their admissions to the hospital. In addition, we conclude that the doctrine of judicial estoppel does not apply to this case.

I
The Hospital Patients Bill of Rights Act confers various rights upon hospital patients, including "privacy to the extent consistent with providing adequate medical care," N.J.S.A. 26:2H-12.8(f), and "privacy and confidentiality of all records pertaining to . . . treatment," N.J.S.A. 26:2H-12.8(g). We conclude that these statutory rights of patient privacy and confidentiality of medical records protect a patient from a hospital's disclosure of his or her admittance to the hospital. Indeed, our courts held even before enactment of this legislation that a patient has a privacy interest in withholding disclosure of information concerning his or her hospital admittance. See, e.g., Hernandez v. Overlook Hosp., 291 N.J.Super. 462, 476-77, 677 A.2d 811 (Ch.Div. 1995), aff'd o.b., 293 N.J.Super. 260, 680 A.2d 765 (App.Div.1996), rev'd on other grounds, 149 N.J. 68, 692 A.2d 971 (1997); Unick v. Kessler Mem'l Hosp., 107 N.J.Super. 121, 125-26, 257 A.2d 134 (Law Div. 1969); Osterman v. Ehrenworth, 106 N.J.Super. 515, 523-26, 256 A.2d 123 (Law Div.1969). Courts in other jurisdictions have also recognized that a patient's privacy rights may include a right of non-disclosure of admittance into the hospital. See, e.g., Dorris v. Detroit Osteopathic Hosp. Corp., 460 Mich. 26, 594 N.W.2d 455, 460-62 (1999); Gunn v. Sound Shore Med. Ctr., 5 A.D.3d 435, 772 N.Y.S.2d 714, 715 (2004).
We reject plaintiff's argument that disclosure of a hospital patient's name, without accompanying information concerning his or her medical condition or course of treatment, does not violate the patient's privacy rights. As the Hospital Association's brief points out, an admission to a hospital may involve a matter of great personal sensitivity, such as an abortion, venereal disease, drug overdose, alcohol abuse, attempted suicide, or injuries resulting from domestic violence or sexual assault. Disclosure of a person's admission into a hospital also may reveal information *1148 about a serious injury or illness that could jeopardize a person's employment or opportunities for professional advancement. For example, the disclosure that a person was a patient in a trauma center indicates that the person suffered a serious enough injury to require admittance into such a hospital unit. Moreover, the disclosure of this information may lead interested parties, such as friends, neighbors or an employer, to make inquiries of the patient or others concerning the circumstances of the hospital admission, which may result in disclosure of the reason for the hospitalization. Therefore, we conclude that the patient privacy and confidentiality of medical records protections of the Hospital Patients Bill of Rights Act include a prohibition against a hospital's disclosure of the names and addresses of its patients.

II
The Physician-Patient privilege also protects against disclosure of a person's admission into a hospital. N.J.S.A. 2A:84A-22.2 provides that any confidential communication between a patient and physician that either the patient or physician "reasonably believed . . . to be necessary or helpful to enable the physician to make a diagnosis of the condition of the patient or to prescribe or render treatment therefore" is privileged. N.J.S.A. 2A:84-22.1 defines a confidential communication between a physician and patient to mean "such information . . . as is transmitted in confidence and by a means which, so far as the patient is aware, discloses the information to no third persons," except those reasonably necessary for the communication between the physician and patient or for medical treatment.[3]
"This obligation of confidentiality. . . applies not only to physicians but to hospitals as well." Estate of Behringer v. Med. Ctr. at Princeton, 249 N.J.Super. 597, 632, 592 A.2d 1251 (Law Div.1991); see also Unick, supra, 107 N.J.Super. at 125, 257 A.2d 134 ("While hospital records are not specifically mentioned in the privilege statute . . . it is apparent that these records are encompassed by the privilege.").
"The purpose of the patient-physician privilege is to enable the patient to secure medical services without fear of betrayal and unwarranted embarrassing and detrimental disclosure in court of information which might deter him from revealing his symptoms to a doctor to the detriment of his health." Piller v. Kovarsky, 194 N.J.Super. 392, 396, 476 A.2d 1279 (Law Div.1984). In some circumstances, the mere fact that a person has obtained treatment from a particular doctor or been admitted to a particular unit of a hospital may be highly embarrassing or detrimental to that person's personal or professional interests, even if the specific medical condition for which treatment was obtained is not disclosed. See Marte v. Brooklyn Hosp. Ctr., 9 A.D.3d 41, 779 N.Y.S.2d 82, 87 (App.Div.2004) (noting that in some circumstances "the revelation of a patient's location in a hospital would, by simple deduction, also reveal that patient's medical status"); Hetter v. Eighth Jud. Dist. Ct., 110 Nev. 513, 874 P.2d 762, 764 (1994) (same); cf. In re Advisory Opinion No. 544, 103 N.J. 399, 408, 511 A.2d 609 (1986) (noting that identity of an attorney's client is protected from disclosure under the attorney-client privilege because it "may indirectly reveal other information *1149 about the client," such as the "fact that he or she has a legal problem that required the services of an attorney.").
Moreover, as previously discussed, the disclosure of such information is likely to lead to questioning of the patient or others that may result in disclosure of the specific reason for the hospital admission. Even if the patient seeks to avoid revealing this information, his or her efforts to deflect inquiries may be embarrassing or lead to even more intrusive questioning.
Therefore, we conclude that the "information" a patient communicates in confidence to a physician or hospital that is protected from disclosure by the Physician-Patient privilege includes the patient's name and address.[4]See Hernandez, supra, 291 N.J.Super. at 476-77, 677 A.2d 811; Unick, supra, 107 N.J.Super. at 126-27, 257 A.2d 134; Osterman, supra, 106 N.J.Super. at 523-26, 256 A.2d 123.

III
Although the Hospital Patients Bill of Rights Act and the Physician-Patient privilege prohibit a hospital from disclosing the names of its patients, the privacy protections provided by these statutes are not absolute. The patient privacy provision of the Hospital Patients Bill of Rights Act does not "preclude discussion of a patient's case or examination of a patient by appropriate health care personnel," N.J.S.A. 26:2H-12.8(f), and its confidentiality of medical records provision allows disclosure "as otherwise provided by law or third party payment contract," N.J.S.A. 26:2H-12.8(g). The statute establishing the Physician-Patient privilege provides that the privilege may not be asserted in "an action in which the condition of the patient is an element or factor of the claim or defense of the patient," N.J.S.A. 2A:84A-22.4, or in any of the other circumstances set forth in N.J.S.A. 2A:84-22.3 to -22.7.
In addition to these express exceptions to the privileges provided by these legislative enactments, our courts have recognized that competing public policies may require disclosure of otherwise privileged information under some circumstances. See, e.g., Kinsella v. Kinsella, 150 N.J. 276, 299, 696 A.2d 556 (1997); McClain v. College Hosp., 99 N.J. 346, 351, 361-65, 492 A.2d 991 (1985); State v. Dyal, 97 N.J. 229, 237-41, 478 A.2d 390 (1984). However, such disclosure is required only if the party seeking production makes a "compelling" showing of a particularized need for the information. McClain, supra, 99 N.J. at 362-64, 492 A.2d 991.
Plaintiff has failed to show a compelling need for disclosure of the names of the other patients videotaped by NYT. He does not allege that any other patient was a witness to NYT's videotaping of him or his alleged consent to that videotaping. Moreover, NYT has now produced all the videotape footage of plaintiff, see Kinsella, 370 N.J.Super. at 314, 851 A.2d 105, which is presumably the best evidence of both the circumstances of the videotaping and plaintiff's alleged consent.[5] Thus, plaintiff's objective in seeking the names of *1150 other patients is not to obtain direct evidence relating to his own videotaping but rather to obtain evidence of the videotaping of those other patients and whatever efforts may have been made to obtain their consent to that videotaping.
Plaintiff presumably contemplates presenting such evidence to establish NYT's "habit or routine practice" in its videotaping at Jersey Shore, to support an inference that NYT "acted in conformity with [that] habit or routine practice" in videotaping and obtaining plaintiff's consent to his videotaping. N.J.R.E. 406; see 1 McCormick on Evidence (Strong ed., 5th ed.1999). To obtain such evidence, plaintiff would have to ask the other patients whose names were disclosed by Jersey Shore about their medical conditions at the time of admission, particularly whether they were unconscious or heavily medicated and whether they have any memory of being videotaped by NYT or being asked to consent to videotaping. Questions designed to elicit this information would be likely to lead to follow-up questions regarding the reason for those patients' admissions to the hospital and their course of treatment. Moreover, plaintiff's efforts to communicate with former patients in the trauma center could result in disclosure of their hospitalizations to other people with whom they reside or work. Consequently, plaintiff's interest in obtaining habit or routine practice evidence from other patients, as circumstantial evidence supportive of his claims relating to his own videotaping, does not outweigh those patients' interests in preserving the confidentiality of their admissions to the trauma center at Jersey Shore.
Plaintiff also argues that there is a need for disclosure of the names of other patients videotaped by NYT because they are members of a putative class on behalf of which a companion case has been brought. However, this is not a class action; it is solely an individual action brought on behalf of one patient. Consequently, it would be inappropriate to require disclosure of confidential information in this action to fulfill an alleged obligation of plaintiff's counsel in representing a class in another case. If the class certification in the companion case is affirmed on appeal,[6] the court will then be called upon to determine whether disclosure of the class members' names and addresses is required in order to notify them of the action.

IV
Plaintiff argues that the doctrine of judicial estoppel precludes Jersey Shore from asserting the confidentiality of its patients' names because its current position that their admission to the hospital is protected from disclosure is inconsistent with its prior position in allowing NYT to videotape the patients without their prior consent. However, judicial estoppel only applies if a party advocates a position in a judicial or administrative proceeding that is "contrary to a position it successfully asserted in the same or a prior proceeding." Ali v. Rutgers, 166 N.J. 280, 287, 765 A.2d 714 (2000) (quoting Kimball Int'l, Inc. v. Northfield Metal Prod., 334 N.J.Super 596, 608, 760 A.2d 794 (App.Div. 2000)). Jersey Shore has not asserted in any prior judicial or administrative proceeding that the Hospital Patient Bill of Rights Act and Physician-Patient privilege do not protect the disclosure of patients' names. Consequently, the doctrine of judicial estoppel does not foreclose Jersey Shore from now asserting that they do *1151 provide such protection. Moreover, the privacy and confidentiality interests protected by these statutes belong to the patients, not to the hospital. Therefore, even if Jersey Shore violated its patients' privacy rights by allowing NYT to videotape them, see Kinsella, supra, 362 N.J.Super. at 156, 827 A.2d 325, this could not justify violating those rights a second time by disclosing the patients' names to plaintiff and his counsel without their permission.
Accordingly, the order requiring Jersey Shore to disclose the names and addresses of all the patients videotaped by NYT to plaintiff is reversed.
NOTES
[1] For a more detailed presentation of the procedural history and facts of this case and the companion litigation involving NYT's videotaping at Jersey Shore, see Kinsella v. Welch, 362 N.J.Super. 143, 149-51, 827 A.2d 325 (App.Div.2003), Castro v. NYT Television, 370 N.J.Super. 282, 287-89, 851 A.2d 88 (App.Div. 2004), and Kinsella v. NYT Television, 370 N.J.Super. 311, 313-16, 851 A.2d 105 (App. Div.2004).
[2] In vacating this order, we pointed out that in the absence of a remand, a trial court lacks jurisdiction to entertain any motion during the pendency of an interlocutory appeal, except a motion seeking enforcement of one of its orders. See R. 2:9-1(a) and R. 2:5-1(g).
[3] Although the Physician-Patient privilege, like other evidentiary privileges, was enacted by the Legislature, it is also contained in the evidence rules adopted by the Supreme Court, currently N.J.R.E. 506. See Busik v. Levine, 63 N.J. 351, 367-68, 307 A.2d 571 (1973).
[4] Because we conclude that the names and addresses of hospital patients are protected from disclosure by the Hospital Patients Bill of Rights Act and the Physician-Patient privilege, we have no need to consider the protections of the federal Health Insurance Portability and Accountability Act of 1996, Pub.L. No. 104-191, 110 Stat.1936, and its implementing regulations, 45 C.F.R. § 160-64.
[5] Plaintiff also has been given the names of the forty-three other patients who signed consents to the videotaping by NYT. It is unclear whether plaintiff's counsel has undertaken to communicate with those other patients.
[6] That class certification is the subject of a pending interlocutory appeal before this panel.